1              UNITED STATES DISTRICT COURT

2              WESTERN DISTRICT OF NEW YORK

3

4

5    - - - - - - - - - - - - - X
     UNITED STATES OF AMERICA    )    14CR89A
6                                )
     vs.
7                                     Buffalo, New York
     STACY SAMUELS,              )    September 26, 2014
8              Defendant.             10:00 a.m.
     - - - - - - - - - - - - - X
9    **MOTION**
     **Transcribed from an Electronic Recording Device**
10
                     TRANSCRIPT OF PROCEEDINGS
11        BEFORE THE HONORABLE JEREMIAH J. MCCARTHY
                 UNITED STATES MAGISTRATE JUDGE
12

13

14              WILLIAM J. HOCHUL, JR., ESQ.
                United States Attorney
15              BY: EDWARD WHITE, ESQ.
                Assistant United States Attorney
16              139 Delaware Avenue
                Buffalo, New York 14202
17

18
                JEREMY D. SCHWARTZ, ESQ.
19              484 Delaware Avenue
                Buffalo, New York 14202
20              Appearing on behalf of the Defendant

21

22

23
     COURT REPORTER:    Karen J. Bush, Official Court Reporter
24                      (585) 613-4312
                        100 State Street
25                      Rochester, New York 14614

1          USA VS. S. SAMUELS

2              P R O C E E D I N G S

3                  *        *        *

4

5

6          THE CLERK:  On the record, this is the matter the

7    United States versus Stacy Samuels, case No. 14CR89.  For the

8    government, Edward White; for the defendant, Jeremy Schwartz.

9    The defendant is present.  We're here for oral argument before

10   the Honorable Jeremiah J. Mccarthy.

11          THE COURT:  Good morning, Ms. Samuels.  Good

12   morning, counsel.

13          MR. WHITE:  Good morning.

14          MS. SCHWARTZ:  Good morning, Judge.

15          MAGISTRATE JUDGE MCCARTHY:  I've reviewed the

16   submissions.  And I'll hear, counsel, Mr. Schwartz, in light of

17   the government's response, are there some aspects of your

18   motion that are moot?

19          MS. SCHWARTZ:  Judge, the government has provided

20   discovery and those related motions, I think, are satisfied.

21   The one item of contention that I have not received, I

22   understand that the government does not have in their

23   possession, would be the supporting affidavits, or whatever it

24   is that is used to support the issuance of a search warrant for

25   the Canadian Magistrate.  And that is going to be the bulk of

USA VS. S. SAMUELS

what I want to argue.  I did move for suppression of the
eavesdropping evidence because it was recorded based on a
Canadian Magistrate's order.  And I know there is a lot of case
law -- well, there is some case law, and I know this Court's
seen some of these cases come through and made some decisions
or recommendations with respect to that.  I think this one is a
little different.  First of all, well, the main difference
being, and the government stated in its response, that there is
no evidence that there was recording going on in the United
States, but that is just not true.  In the discovery, the
government sent some intercepted SMS messages, text messages,
and these are messages allegedly between Ms. Samuels and the
co-defendant, Karone Johnson, regarding what they're doing
while they're in the United States.  So, there is the Canadian
authorities recording individuals on U.S. soil, which, I think,
does make a difference here.  This isn't something that
happened at the border where the Fourth Amendment essentially
doesn't apply or in Canada where the Fourth Amendment
essentially doesn't apply.  These are conversations going on
while she is in the United States and the Fourth Amendment
does, of course, apply to her here.

MAGISTRATE JUDGE MCCARTHY:  But the Fourth
Amendment applies to actions by the government.

MS. SCHWARTZ:  Well, that's -- yes.  And if the

1                    USA VS. S. SAMUELS

2    Canadians -- we probably need a hearing on this is what I'm

3    getting at, Judge.  If the Canadian authorities were working in

4    conjunction closely with the U.S. authorities on this, which

5    all of the evidence, it looks that way from what happened,

6    because Karone Johnson -- these recordings were going on.

7    Karone Johnson is arrested before he leaves the United States

8    by U.S. authorities and charged in the U.S., so it sounds like

9    the U.S. was using -- availing itself of Canada's monitoring,

10   which was not done by -- which, of course, was done by a

11   Canadian order.  So, the U.S. authorities are using that to

12   monitor people and arrest them before they leave the United

13   States and charge them with U.S. crimes.  So, this isn't just

14   they arrested somebody in the United States and they are

15   getting the benefit of what Canada had from the past.  This is

16   something that happened in realtime.  And I think we need a

17   hearing as to the extent to which they're involved.  Or the

18   government should at least be ordered to attempt to get the

19   affidavit from the RCMP.

20              MAGISTRATE JUDGE MCCARTHY:  Why shouldn't you get

21   it?  The case they cited, the *Lee*, *United States vs. Lee,* in

22   that case the Court said the defendant could have obtained it

23   by letters or something of that sort and made no effort to do

24   so.

25              MS. SCHWARTZ:  Well, I tried to that process.  I

1                          USA VS. S. SAMUELS

2      had some discussion with a lawyer in Canada, and they tell me

3      that the RCMP, that it's very difficult to do that.  And this

4      lawyer in Canada has made attempts to do that, actually, and

5      has met with a wall.  So, I have not been able to get it.  I

6      can and will continue to attempt to do that.  But it's not

7      something that -- I don't know why the case law seems to

8      suggest that it's such an easy matter to do when Canadian

9      lawyers can't even do it.

10                 MAGISTRATE JUDGE MCCARTHY:  Mr. White, what is

11     your position on the hearing?

12                 MR. WHITE:  Well, I don't think --

13                 MAGISTRATE JUDGE MCCARTHY:  Well, first of all, on

14     getting a copy of the application.

15                 MR. WHITE:  Well, as Mr. Schwartz just indicated,

16     it's difficult to do.  It's my understanding they would fight

17     it and I don't know -- I think the supposition is it's easier

18     for the U.S. government to get it than it is for a defense

19     attorney.  That's not true.  It's difficult for anyone in the

20     United States to get it.  And I think it is difficult for

21     anyone in Canada to get a copy of the underlying application

22     and affidavit for these eavesdropping warrants.  And as

23     indicated, as you pointed out, Judge, in that decision in *Lee*,

24     it's just as easy, the burden shouldn't necessarily fall on the

25     government to try and track this down and go through every

1  
2  potential legal hoop to potentially try and get this
3  application/affidavit.  It's just as easy for the defense to
4  try and get it.  And it is difficult -- it's difficult for the
5  United States government as well.  And it's my understanding,
6  Judge, that they would fight it, they don't just voluntarily
7  turn it over.  So, that is one issue.  And as indicated in the
8  *Lee* case, the Court denied the defendant's motion to compel the
9  production -- the motion to compel the United States Government
10 to produce that underlying affidavit.  And as the Court, I
11 think, is well aware, the general rule in this case is that the
12 Fourth Amendment and Title 3 doesn't apply to foreign
13 governments and to foreign wiretaps.  And there are generally
14 two exceptions to that rule, however, and that is when there is
15 evidence that the foreign officials engaged in conduct that
16 would shock the conscience, the judicial conscience.  And here
17 there is no such evidence of any illegal sinister conduct by
18 the Canadian authorities in obtaining the eavesdropping
19 warrant.  The government has produced the only evidence or
20 document that it has in its possession regarding the
21 eavesdropping warrant is the warrant itself.  The warrant
22 itself, while it doesn't contain the underlying -- the
23 supporting affidavit, it does indicate the process that was
24 gone through, and clearly it's similar to the process in the
25 United States where a law enforcement officer submits a sworn

USA VS. S. SAMUELS

affidavit and it works in conjunction with a Canadian lawyer, a
prosecutor there, and they submit it to a magistrate.  The
magistrate reviews and then determines whether there is
probable cause to issue the warrant.  And that is what happened
here.  So, there is no evidence whatsoever of any sort of
conduct that might shock the judicial conscience here.  And,
secondly, the other exception to the general rule is when the
Canadians or any foreign agent just becomes a virtual agent of
the United States.  Where it's basically the United States
somehow captures foreign agents and uses them at their
discretion to avoid restrictions of the Fourth Amendment, and
clearly here that is not the case.  As well as indicated in our
papers, Judge, the Canadian -- this is an independent
investigation by the Canadians.  They filed the request for the
wiretap warrant back in January, January 30th of 2014.  The
United States didn't know anything about this investigation
until March 20th, 2014 when the Canadians realized that there
was potential for the defendant and others in the conspiracy to
that they may cross the border to try and obtain this
methamphetamine.  And that is when the border enforcement task
force, the joint task force, got together, and the Canadians
requested the assistance, the potential assistance of the
Americans to help them conduct surveillance if these targets
cross the borders, which they ended up doing.  So, it's clearly

1

2    this wasn't a case where the United States was directing this

3    investigation and that they merely used foreign officials to

4    try and subvert the Fourth Amendment.  And, Judge, I think, I'm

5    sorry, specifically on the issue of a hearing, as indicated in

6    footnote 1 of our brief, I don't think there is a need for a

7    hearing.  The defense has to come up with some sort of basis,

8    some allegation that there is -- and not just a pure

9    speculative allegation that something nefarious occurred here.

10    There has to be some sort of proof of that or at least some

11    evidence of it.  There isn't here.  There is pure speculation

12    that something sinister happened and there is no evidence of

13    that whatsoever.  So, I don't think a warrant is warranted.

14            MS. SCHWARTZ:  Of course that is part of the

15    problem with not having an affidavit because I have to have --

16    we have no evidence of what they did at all to get the wiretap.

17    We have no evidence, period.  So, in order to come up with

18    evidence -- I have no idea -- I have no idea how they got the

19    wiretap warrant.  And the fact that there is a standard at all,

20    even it's pretty much the highest standard in our system, to

21    shock the judicial conscience matter, but the fact that there

22    is a standard at all, implies there is a right to review.  And

23    without the affidavit, you can't review.  So, and the

24    government is saying even the government can't get it.  So, I

25    don't think they should be able to use it if the Court was

1                          USA VS. S. SAMUELS
2      unable to review it at all, whatsoever.  And, also, I don't
3      agree that it's just obvious that the U.S. had no involvement
4      in this.  That is why we have hearings.
5                    MR. WHITE:  If I may, Judge.
6                    MAGISTRATE JUDGE MCCARTHY:  Well, counsel, I'm
7      leaning toward not ordering a hearing, but I want to take
8      another look at this and the case law.  And I will get a
9      written decision out or recommendation out and we'll see where
10     we go.  As far as an obligation or opportunity to obtain the
11     underlying application, it seems to me that both parties are
12     pretty much in the same boat with respect to that.  And it's
13     the defense motion.  But, again, I want to take another look at
14     this, and I'll get a Report and Recommendation out.  And if I
15     decide that we will have a hearing, we can reconvene to
16     schedule it.  And if I decide that a hearing is not necessary
17     at this time, then you can take that upstairs, okay?
18                   MS. SCHWARTZ:  Understood.
19                   MAGISTRATE JUDGE MCCARTHY:  Okay.  And with the
20     exception of that issue, I'll deem the remainder of the motion
21     moot as satisfied by the government's response.
22                   MS. SCHWARTZ:  Yes, Judge.
23                   MR. WHITE:  Thank you.
24                   MAGISTRATE JUDGE MCCARTHY:  Thank you.  The
25     defendant's remanded.

1

2

3

4                   CERTIFICATE OF TRANSCRIBER

5

6        I certify that the foregoing is a correct transcript from

7   the official electronic sound recording of the proceedings in

8   the above-entitled matter.

9

10  /s Karen J. Bush, RPR

11  Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25