UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA 14-CR-89(RJA)

vs.

Buffalo, New York

KARONE JOHNSON, May 14, 2015

Defendant. 11:06 a.m.

- - - - - - - - - - - - - - - X

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JEREMIAH J. MCCARTHY
UNITED STATES MAGISTRATE JUDGE

WILLIAM J. HOCHUL, ESQ.
United States Attorney
BY: EDWARD H. WHITE, ESQ.
Assistant United States Attorney
138 Delaware Avenue
Buffalo, New York 14202

LOSI & GANGI
BY: PATRICK J. BROWN, ESQ.
147 Linwood Avenue
Buffalo, New York 14209
Appearing on behalf of the Defendant

AUDIO RECORDER: Debbie Zamito

TRANSCRIBER: Christi A. Macri, FAPR-CRR
Kenneth B. Keating Federal Building
100 State Street, Room 2120
Rochester, New York 14614

(Proceedings recorded by electronic sound recording, transcript produced by computer).

**P R O C E E D I N G S**

* * *

**(WHEREUPON**, the defendant is present).

**THE CLERK:** On the record. This is United States vs. Karone Johnson, case number 14-CR-89(A).

For the Government, Edward White.

For the defendant, Patrick Brown.

The defendant is present.

We're here for oral argument before the Honorable Jeremiah J. McCarthy.

**MAGISTRATE JUDGE MCCARTHY:** Good morning, Mr. Johnson. Good morning, counsel.

**MR. WHITE:** Good morning, Judge.

**MR. BROWN:** Good morning, Your Honor.

**MAGISTRATE JUDGE MCCARTHY:** Okay. Mr. Brown, it's my understanding from recent e-mail exchange that the principle issue that you wish to argue is the legality of the intercepted telephone calls and text messages, correct?

**MR. BROWN:** Yeah, that's correct, Your Honor. I think that's kind of the pivotal issue here.

**MAGISTRATE JUDGE MCCARTHY:** Okay. Now, why -- why is -- you indicate in your motion that you reviewed my decision as to Stacy Samuels. Why is this situation any different?

**MR. BROWN:** Judge, I'm not sure that in that

decision that there was a -- and I, of course, am saying this respectfully -- an appreciation of the factual difference between this case and the facts of the *Getto* case and the *Lee* case.

There's -- we agree, Your Honor, that in the normal -- normal circumstances the courts of the United States aren't going to engage in a review of a foreign wiretap order to see whether or not it complied with the legalities of whatever jurisdiction issued it.

And we also understand, Your Honor, that the -- one of the rationales for suppression, namely, the regulation of police activity, the courts have held that that doesn't really apply if -- if the U.S. court's going to make a ruling that perhaps a foreign police department didn't do something the right way.

We get that and we're not here to argue some exception to that, but we think that there's a difference here, Judge, because when you look at those cases typically what you see is there's a foreign interception in a foreign country of the -- of the communication.

But here it's a little different because we have a claimed interception of Mr. Johnson's telephone communications, the text messages and voice messages, while he's in the parking garage at the Niagara Casino up in Niagara Falls.

So we have -- we have somebody who arguably is using a telephone in the United States, would have a reasonable expectation of privacy in those calls made in the United States, the calls are being used against him in a court of the United States and there's this happenstance that they were -- that they were okayed, we believe, by -- by a Canadian court.

And you take it to its logical extension, Judge, it would seem that what almost happened here is there could be a carve out from Title III, namely, if you're in a border area where your telephone communications could be intercepted in Canada or I suppose in Mexico, then you don't have any expectation of privacy.

And -- and we see that, Judge, as a fundamental difference here because here we know that there was a joint investigation. From the Government's papers we understand that it originated in Canada; it was originally a Canadian operation.

But then the U.S. agents cooperated over here with both surveillance and then ultimately with the arrest and the questioning of Mr. Johnson.

So this isn't -- this isn't like *Lee* and *Getto* where you -- where you got activity -- one of them was in Israel I believe was *Getto*, and I believe *Lee* is in -- is in -- I think in Jamaica, if I recall correctly, where you've

got -- you've got the activity happening down there and then it's going to be used up here. We get that distinction.

But this is different here because this is happening on U.S. soil. And we think that that's a distinction that maybe wasn't argued or brought to the Court's attention in the Samuels case that we think makes a fundamental difference because, again, you're treating similar -- people are going to be treated differently but for where this -- where this wiretap order -- I mean, if we're going to allow people in the United States to have their calls intercepted --

**MAGISTRATE JUDGE MCCARTHY:** But let's for a minute assume for the sake of argument that it's a joint venture, and I'll just tell you I have difficulty seeing that right now, but let's assume for the sake of argument that it is.

You still have to show then, don't you, that there was something improper in the intercept? And in order to do that, you have to show that there was some impropriety in the application for the Canadian court order, right?

**MR. BROWN:** Well, Judge, I think -- the short answer is yes.

But I think, Judge, that sort of backs us into the problem because the *Lee* case tells us that if the Government doesn't have the application, it doesn't have to turn it over to the -- to the defense.

So -- so it leads to, I believe, an anomalous result because if -- if you accept my argument that this is really no different than a Title III situation, you got somebody in the United States getting their telephone calls intercepted. Ordinarily, no one would argue, well, you need a court order to do that.

And then if you're charged based on that, you've got the right to see the application and, you know, argue minimization and probable cause and all the rest of it.

But it's sort of circular here to say well, yeah, maybe all that happened, but because it's a Canadian warrant, we don't have to show you the application for it. And since we don't have to show it to you, you can't challenge it.

So there's where the anomaly comes in about it. We're sort of backed into a corner here because we're being treated differently than if the same thing had happened, but the -- the intercept order issued from this Court, for example, and then we could challenge it.

**MAGISTRATE JUDGE MCCARTHY:** But in this case, as in *Lee*, I think, the Government does not have the Canadian documents. It's one thing if they have them and say we're not going to turn them over.

They don't have them and as the Court noted in *Lee*, you could apply through letters rogatory to get these documents from the Canadian court.

So it's not like you're totally stonewalled in the ability to challenge it if it comes to that.

**MR. BROWN:** Judge, on that point, Your Honor --

**MAGISTRATE JUDGE MCCARTHY:** Can you just get a little closer to the mic, please?

**MR. BROWN:** Yeah, I'm sorry, Judge.

Judge, I just learned last week that there is a -- I believe it's in the nature of a civil proceeding that's been brought in Ontario on behalf of Mr. Johnson and Ms. Samuels, and I've seen orders directing the turnover of the application up there.

Now, I don't know how that works. I just learned of it last week, so it's not in our papers. But there is an order directing the turnover to -- to counsel up there representing Ms. Samuels and Mr. Johnson.

I don't know -- I don't know how it plays out because even if we -- even if ultimately we get them, then I don't know if we're back in to *Lee* again where I don't know if this Court is going to -- I mean, how would you examine them?

I mean, if this -- would it be a situation of saying, well, are they legal under U.S. procedures?

**MAGISTRATE JUDGE MCCARTHY:** Well, I think the test is if it's -- if it's -- you'd have to show in some way that it was so irregular that it shocks the conscience of the Court, right? I mean, that's --

**MR. BROWN:** That is an exception here that the courts recognize.

**MAGISTRATE JUDGE MCCARTHY:** Yeah. I don't know, but -- well, let me hear -- Mr. White, let me hear from you for a moment and we'll see where we go.

**MR. WHITE:** Thanks, Judge.

I think just to clarify things a little bit, I want to start out by saying I think the whole -- Mr. Brown's point about the physical location of the communications is a complete red herring here based on the analysis that's -- that other courts have established, including *Getto*.

And that's because the focus is on whether there's improper conduct of the law enforcement officers involved in gathering the wiretap information.

And here, as has been well-settled and as the Court itself acknowledged in the prior decision it had in the *Davidson* case and then also in this co-defendant's case, the Samuels case, it's -- it's improper for a U.S. court to -- or exclusionary rule that governs wiretap information here, does not apply to evidence seized by foreign police agents because actions of American courts are unlikely to influence the conduct of foreign agents.

That's the premise. And Title III does not apply to the conduct of foreign officials and foreign courts. And so what the analysis really focuses on -- the exceptions to

those rules are, as the Court acknowledged, whether the conduct of foreign officials is so egregious that it somehow would shock the conscience of an American court.

And we don't -- I don't believe Mr. Brown is asserting that here. I mean, I think the Court is right in that if he's able to get access to the Canadian application and the affidavits there and there's something so nefarious in there, then he can make that argument here.

But that -- but we don't have that here, at least at this point in time. And then the other exceptions, Judge, are when the conduct of foreign officials render them agents of U.S. law enforcement where -- and where the idea is that an American court could intervene and suppress foreign wiretap information, if it was just a ruse essentially and it was set out sort of a joint venture where American agents and foreign agents got together and said let's try to circumvent the U.S. Constitution to get wiretap information and they somehow envelope and get a foreign court to help them do that.

And here, again, there's nothing indicated here that -- and I can test the allegation this is a joint investigation. This clearly was solely a Canadian investigation.

The wiretap information and the application and the Canadian warrant was obtained by the RCMP on January 30th, 2014, almost two months before American agents got involved on

March 20th, 2014.

And they only became involved because the Canadians asked them to, because they gathered that intelligence based in part on the wiretap information that they got that Mr. Johnson potentially was going to cross over the border and pick up the meth and then try to take it back.

That's when the Americans got involved. And that's -- that -- the -- I think the exception where this Court would be warranted in suppressing the evidence is based on a set of facts where somehow American agents were involved at the beginning and, again, colluded with foreign officials, foreign agents to get wiretap authorization by a foreign court.

And that's just not what happened here. It's completely done independently by the Canadians. They applied for it, they got it by a Canadian court. It had nothing to do with -- at that point it had nothing to do with American agents at all.

It was only after they realized that Mr. Johnson and Ms. Samuels potentially were going to cross into the border that they requested U.S. authorities' help.

The other exception -- again, it's very similar, I guess, in my mind, where the exceptions where cooperation between U.S. and foreign officials was designed to evade constitutional requirements applicable to American officials.

Again, that's not -- that is not the situation here. There was no collusion at the outset between American officials or agents and the Canadian officials.

Again, it was an independent investigation by the Canadians. They, I believe rightfully, obtained -- lawfully obtained a Canadian wiretap authorization from a Canadian court.

So -- and Mr. Brown is trying to say that the one distinguishing characteristic of this case versus like *Getto* and the other cases that came before it, that somehow it's different because there were some communications of this defendant, Mr. Johnson, that touched -- touched on the United States and that again is -- I believe it's immaterial, Judge. It doesn't matter.

And I think it's important to note as well, Judge, that Mr. Johnson's cell phone was not a target telephone of the Canadian wiretap. It was only -- it was Stacy Samuels and Andre Samuels and I think there were a few more. But his phone was not the target telephone.

But admittedly I think some of his communications were intercepted where he just -- based on the calls that he made and text messages he sent to Mr. Samuels' phone.

And so even though maybe again like the fact that maybe -- maybe when he was in Niagara Falls, New York that a U.S. cell tower was, you know, somehow pinged and involved in

that is immaterial to the legitimacy of the Canadian investigation and -- and their -- the wiretap warrant that was issued there.

It doesn't -- just the mere fact that some of these communications touched on American soil doesn't give this court jurisdiction to go in and say, well, there's something improper here. I'm going to -- that this court would then have justification for suppressing the evidence here.

And there's nothing in the record that suggests -- and that's what the cases focus on -- is that is there some sort of improper conduct between -- involving American agents and foreign agents.

And there's nothing here that suggests that. And, again, I think -- I know that Mr. Brown refers to the expectation of privacy that Mr. Johnson would have in his phone calls, and that's correct. That doesn't -- the fact that he again -- that he traveled and he was -- traveled into the United States, he still has an expectation of privacy there, but the Canadian -- the Canadian wiretap warrant authorized interception of communications from Ms. Samuels' phone as well as from Mr. Samuels' phone and that was a legitimate authorization there.

And the fact that Mr. Johnson's phone calls to Mr. Samuels and his text messages got intercepted, that was warranted. The Canadian court felt that that was justifiable.

**MAGISTRATE JUDGE MCCARTHY:** All right, counsel, I think I have your positions. I'll take another look at --

**MR. BROWN:** Judge, could I just make a very brief reply?

**MAGISTRATE JUDGE MCCARTHY:** Yeah.

**MR. BROWN:** I apologize for interrupting.

**MAGISTRATE JUDGE MCCARTHY:** That's all right.

**MR. BROWN:** Judge, just one other point here is that this is not a case, Your Honor, where we have this Canadian wiretap order. Mr. Johnson comes over to the United States, the Canadians intercept his calls, then they wait for him at the bridge and arrest him when he goes back to Canada. That didn't happen here.

This is a case where he's never been extradited to Canada. As far as we know, there's no Canadian prosecution at all.

So this isn't like a situation where -- where it's anything less than a joint investigation because it turns out everything's done over here in the United States: He's charged in the United States; he's surveilled in the United States; his telephone calls are intercepted in the United States.

And to say that he can't do anything about the interception because it's a Canadian wiretap order, there's a different set of facts here, Judge.

**MAGISTRATE JUDGE MCCARTHY:** All right, I'll take another look at it and I'll get a Report and Recommendation out focusing on this issue and I believe you confirm, Mr. Brown, that this is the remaining issue in --

**MR. BROWN:** Yes, this is the pivotal issue, Judge.

**MAGISTRATE JUDGE MCCARTHY:** Okay, thank you all.

**MR. WHITE:** Thank you, Judge.

**MR. BROWN:** Thank you.

**MR. WHITE:** Judge, I'm sorry. I just thought I would note the 30 day under advisement period begins --

**MAGISTRATE JUDGE MCCARTHY:** Yes, time remains excluded for another 30 days, correct?

**MR. BROWN:** Yes, Judge.

**MR. WHITE:** Correct.

**MAGISTRATE JUDGE MCCARTHY:** Thank you. Defendant's remanded.

(**WHEREUPON**, the proceedings adjourned at 11:23 a.m.)

* * *

**CERTIFICATE OF TRANSCRIBER**

    In accordance with 28, U.S.C., 753(b), I certify that this is a true and correct record of proceedings from the official electronic sound recording of the proceedings in the United States District Court for the Western District of New York before the Honorable Jeremiah J. McCarthy on May 14th, 2015.

S/ Christi A. Macri

Christi A. Macri, FAPR-CRR
Official Court Reporter