UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

v.

KARONE JOHNSON,

                              Defendant.

_____

**REPORT, RECOMMENDATION
AND ORDER**

14-CR-00089-RJA-JJM

      Defendant Karone Johnson is charged, along with co-defendant Stacy Samuels, in a four-count Superseding Indictment [24][1] with, *inter alia*, attempting to export methamphetamine from the United States into Canada on March 20, 2014, in violation of 21 U.S.C. §963 and 18 U.S.C. §2. [2]  Before me is Johnson's motion to suppress all communications intercepted pursuant to the Canadian wiretap (Brown Affirmation [42], Point II)[3] and the government's cross-motion for reciprocal discovery. Government's Opposition [62], Point XII.

      This case was referred to me by Hon.  Richard J. Arcara for supervision of all pretrial proceedings. May 8, 2014 Text Order; May 30, 2014 Text Order [19].  Oral argument was held on May 14, 2015 [35].  For the following reasons, the government's cross-motion is granted, and I recommend that Johnson's motion be denied.

---

[1]      Bracketed references are to CM-ECF docket entries.

[2]      The Superseding Indictment [24] also contains a forfeiture allegation.

[3]      At the May 14, 2015 oral argument, Johnson agreed that the other portions of his pretrial motion [42] were no longer in dispute.  May 14, 2015 Text Order [67].

**BACKGROUND**

Johnson, a Canadian citizen residing in Canada,[4] alleges that his "cell communications were improperly intercepted by Canadian officials pursuant to [a] Canadian wiretap application."  Brown Affirmation [42], ¶14.  The wiretap warrant was obtained by the Royal Canadian Mounted Police ("RCMP")  for the phone of co-defendant Samuels. Government's Opposition [62], p. 9.

Samuels filed a similar motion to suppress her communications intercepted pursuant to the Canadian wiretap warrant, and I previously recommended that her motion be denied without an evidentiary hearing.  October 2, 2014 Report, Recommendation and Order [36], pp. 2-4; United States v. Samuels, 2014 WL 8771389, *1-2 (W.D.N.Y. 2014). That recommendation was recently adopted by Judge Arcara.  May 4, 2015 Order [65]; 2015 WL 2080001 (W.D.N.Y. 2015).

At the time I addressed Samuels' motion, the parties were in possession of the Canadian wiretap warrant, but no party - including the government - was in possession of the underlying application.  Johnson's counsel advised at the May 14, 2015 oral argument that he recently became aware of a proceeding commenced in Canada by defendants to obtain the wiretap application.  However, at this time, Johnson is not in possession of that application.

---

[4]      *See* Pretrial Services Report dated March 24, 2014.

**ANALYSIS**

**A.      Johnson's Motion to Suppress Eavesdropping Evidence**

"When conducted in this country, wiretaps by federal officials are largely governed by Title III of the Omnibus Crime Control and Safe Streets Act of 1968 . . . ., but . . . this statute does not apply outside the United States." United States v. Getto, 729 F.3d 221, 228, n. 7 (2d Cir. 2013).  Therefore, "suppression is generally not required when the evidence at issue is obtained by foreign law enforcement officials".  Id. at 227.

However, the court has recognized "two circumstances where evidence obtained in a foreign jurisdiction may be excluded: first, where the conduct of foreign officials in acquiring the evidence is so extreme that it shocks the judicial conscience and second, where cooperation with foreign law enforcement officials may implicate constitutional restrictions". Id. at 228. "[U]nder the 'constitutional restrictions' exception, constitutional requirements may attach in two situations: (1) where the conduct of foreign law enforcement officials rendered them agents, or virtual agents, of United States law enforcement officials; or (2) where the cooperation between the United States and foreign law enforcement agencies is designed to evade constitutional requirements applicable to American officials".  Id. at 230.

Johnson "does not argue that the conduct shocks the judicial conscience".  Brown Affirmation [42], ¶19.  Instead, he  argues that "the Canadian agents created and utilized an agency relationship over the United States law enforcement officials in furtherance of their investigation to warrant suppression" (id.).

In recommending that Samuels' motion to suppress the Canadian wiretap warrant evidence  be denied without a hearing, I concluded, in relevant part,  that "[i]n the absence of any

evidence demonstrating that Canadian law enforcement[ ] . . . acted as 'virtual agents' of the United States or that they acted in concert with the United States to evade constitutional requirements, there is no basis for suppression." Samuels, 2014 WL 8771389, *2.  While I recognized that Samuels was hampered by the fact that she did not have the underlying material supporting the Canadian wiretap, I noted that "neither the court nor the government is obligated to obtain these materials." Id. (citing United States v. Lee, 723 F.3d 134, 142 (2d Cir.2013), cert. denied, __U.S. __, 134 S.Ct. 976 (2014)).

       Johnson provides no compelling reason why this rationale is not equally applicable to his motion.  While he argues that "unlike the fact pattern in Getto and Lee, the wiretap activity, here, actually took place in the United States" (Johnson's Reply [63], p. 2), "it is not the route followed by foreign communications which determines the application of Title III; it is where the interception took place".  United States v. Cotroni, 527 F.2d 708, 711 (2d Cir. 1975), cert. denied, 426 U.S. 906 (1976). See Stowe v. Devoy, 588 F.2d 336, 342 n. 12 (2d Cir. 1978), cert. denied, 442 U.S. 931 (1979) ("That Stowe was in the United States when his calls were intercepted does not change the result here. The law of the locality in which the tap exists (and where the interception takes place) governs its validity, even though the intercepted phone conversations traveled in part over the United States communication system"). Thus, even if Johnson's cellular telephone communications with Samuels were intercepted while he was in the United States, I agree with the government that this "is of no moment, as the interceptions were made by Canadian officials".  Government's Opposition [62], p. 10, n. 2.

       Johnson also speculates "upon information and belief" that "the United States officials took up . . . interception at the behest of Canadian officials".  Brown Affirmation [42],

¶24.  The government disputes this, stating that the "interception of any communications on the defendant's phone did not occur by United States officials even after the defendant crossed into the United States". Government's Opposition [62], p. 10.  This is supported by the Report of Investigation [62-1], which contains no reference to the interception of communications by the United States law enforcement officers involved on the day of Johnson's arrest.

"[A]n evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question". Getto,  729 F.3d at 227 n.6.  Since Johnson offers no support for his belief that United States officials were monitoring his communications when he entered the United States, I conclude that he has not established his entitlement to an evidentiary hearing on this issue.  United States v. Mitro, 880 F.2d 1480, 1484 (1st Cir. 1989) ("Defendants' challenge to the evidence derived from the judicially authorized wiretap has consisted solely of conclusory, general allegations; they have failed to allege any facts regarding specific acts on the part of the RCMP that would even suggest circumstances that would shock the judicial conscience. An evidentiary hearing was not required in such circumstances").

At the May 14, 2015 oral argument, Johnson's counsel further argued that Johnson's  prosecution in the United States evidences that Canadian law enforcement were acting as agents of the United States.  However, "[a] number of factors may properly inform the decision of prosecutorial venue among different sovereign states".  Getto, 729 F.3d at 232.  Therefore, I "decline to infer that the decision to prosecute defendant in the United States, without more, indicates that American law enforcement directed the . . .  investigation abroad." Id.  *See also*

United States v. Cote, 2015 WL 51303, *5  (N.D.Ga. 2015) ("The fact that German authorities, who had a preexisting investigation and plan to execute search warrants, agreed to defer prosecution to the United States . . . does not satisfy the joint venture doctrine").

        For these reasons and those set forth in my October 2, 2014 Report, Recommendation and Order addressing Samuels' suppression motion (Samuels, 2014 WL 8771389, *1-2), I recommend that Johnson's motion to suppress be denied, without prejudice.

**B.**      **Government's Cross-Motion for Reciprocal Discovery**

        The government moves for reciprocal discovery pursuant to Fed. R. Crim. P. ("Rule") 16(b).  Government's Opposition [62], Point XII.  Johnson has not opposed this request. Therefore, the government's motion is granted.  "Defendant shall provide such discovery, if any, not later than 30 days prior to trial or such other date as the District Judge may direct." United States v. Sikut, 488 F.Supp.2d 291, 304-05 (W.D.N.Y.2007) (Foschio, M.J./Arcara, J.).

## CONCLUSION

        For these reasons, the government's cross-motion for reciprocal discovery (government's Opposition [62], Point XII) is granted, and I recommend that Johnson's motion to suppress eavesdropping evidence (Brown  Affirmation [42], Point II) be denied, without prejudice.

        Unless otherwise ordered by Judge Arcara, any objections to this Report, Recommendation and Order must be filed with the clerk of this court by June 26, 2015 (applying the time frames set forth in Rules 45(a)(1)(C), 45(c), and 59(b)(2)).  Any requests for extension of

this deadline must be made to Judge Arcara.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision".   Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(2) of this Court's Local Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority", and pursuant to Local Rule 59(b)(3), the objections must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or  identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objection.

Dated: June 9, 2015

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge