FILED
FEB 19 2016
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.  14-CR-89-A

STACY SAMUELS,

          Defendant.

## PLEA AGREEMENT

The defendant, STACY SAMUELS, and the United States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a plea agreement with the terms and conditions as set out below.

### I. THE PLEA AND POSSIBLE SENTENCE

1. The defendant agrees to plead guilty to Count 1 of the Second Superseding Indictment which charges a violation of Title 21, United States Code, Section 846 (conspiracy to possess with intent to distribute, and to distribute, fifty (50) grams or more of methamphetamine and five hundred (500) grams or more of a mixture and substance containing methamphetamine), for which the mandatory minimum term of imprisonment is 10 years and the maximum possible sentence is a term of imprisonment of life, a fine of $10,000,000, a mandatory $100 special assessment, and a term of supervised release of at least 5 years and up to life. The defendant understands that the penalties set forth in this paragraph are the minimum and maximum penalties that can be imposed by the Court at sentencing.

2. The defendant understands that, if it is determined that the defendant has violated any of the terms or conditions of supervised release, the defendant may be required to serve in prison all or part of the term of supervised release, up to five (5) years, without credit for time previously served on supervised release.

## II. ELEMENTS AND FACTUAL BASIS

3. The defendant understands the nature of the offense set forth in ¶ 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crime: that an agreement existed between two or more persons to commit a controlled substance felony offense; that the defendant knew of the existence of the agreement; that the defendant intended to participate in the unlawful agreement; and that at least fifty (50) grams of methamphetamine or at least five hundred (500) grams of a mixture and substance containing methamphetamine was reasonably foreseeable to the defendant as being within the scope of the agreement.

## FACTUAL BASIS

4. The defendant and the government agree to the following facts, which form the basis for the entry of the plea of guilty including relevant conduct:

   a. Between in or about 2014, the exact date being unknown, and on or about April 7, 2014, the defendant conspired with Andrie Samuels, Karone Johnson, and others, known and unknown, to possess with intent to distribute, and to distribute, 50 grams or more of actual methamphetamine and 500 grams or more of a mixture and substance containing methamphetamine, a Schedule II controlled substance.

b. On March 20, 2014, members of the Peel Regional Police Department in Ontario, Canada intercepted a conversation between Andrie Samuels and Karone Johnson pursuant to a previously obtained wiretap of Andrie Samuels' telephone. Andrie Samuels discussed plans to meet with Karone Johnson at a hotel in Niagara Falls, Ontario, then it was expected that Johnson would cross the border into the United States, pick up a controlled substance from the defendant, and attempt to bring the substance back to Canada.

c. Later that same day, members of the Royal Canadian Mounted Police and the Peel Regional Police, working jointly with the United States Department of Homeland Security, Homeland Security Investigations, as part of the Border Enforcement Security Task Force, observed Andrie Samuels and the defendant meeting with Johnson at the Travel Lodge Hotel in Niagara Falls, Ontario, Canada. Andrie Samuels informed Johnson that Johnson would be paid $3,500.00 to cross the border into Niagara Falls, New York, meet with the defendant in the parking lot of the Seneca Niagara Casino to obtain a controlled substance from her, and to drive back over the border into Canada and deliver the controlled substance to Andrie Samuels at the Travel Lodge Hotel in Niagara Falls, Ontario.

d. Johnson left the Travel Lodge Hotel in a blue 2003 Hyundai Tiberon, and the defendant left the hotel in a silver 2008 Mazda CX-9 SUV. Johnson picked up a friend and then drove over the border through the Rainbow Bridge to the Seneca Niagara Casino in Niagara Falls, New York. The defendant drove over the border through the Rainbow Bridge to a hotel in Niagara Falls, New York where she obtained several plastic bags containing methamphetamine from two unknown individuals. Approximately an hour and a half later, the defendant arrived at the Casino parking lot in the silver 2008 Mazda CX-9, and Johnson moved his car next to the defendant's car on the first floor of the Casino parking lot. They opened the trunks of their vehicles, and Johnson used a screwdriver to unscrew a speaker box in the back of his car, and the defendant retrieved several plastic bags containing methamphetamine from her vehicle. Johnson placed the plastic bags into the speaker box in his car and returned the speaker to its proper position. Johnson picked up his friend at the Casino and drove back over the Rainbow Bridge attempting to exit the United States with the defendant following him in her vehicle.

e. During a secondary inspection of Johnson's vehicle at the Rainbow Bridge, United States Customs and Border Protection Officers noticed that some of the screws securing a speaker into a speaker box in the rear cargo hatch of Johnson's car appeared to be newer than others. The speaker was removed and the officers discovered three plastic grocery bags in the

3

speaker box, which contained five packages containing a hard, off-white crystalline substance that field tested positive for methamphetamine and had a net weight of 2,387.9 grams.

f.  The equivalent of at least one point five (1.5) kilograms but less than five (5) kilograms of <u>actual</u> methamphetamine is the amount involved in the defendant's relevant conduct encompassed in the Indictment which could be readily proven by the government against the defendant.

## III. SENTENCING GUIDELINES

5.  The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984).

### BASE OFFENSE LEVEL

6.  The government maintains that Guidelines §§ 2D1.1(a)(5) and 2D1.1(c)(2) apply to the offense of conviction and provide for a base offense level of **36**. The defendant maintains that Guidelines §§ 2D1.1(a)(5)(A) and (B), 2D1.1(c)(2), and 3B1.2 (mitigating role) apply to the offense of conviction and provide for a base offense level of **33**.

### SPECIFIC OFFENSE CHARACTERISTICS

7.  The government and the defendant agree that the following specific offense characteristic does apply:

a.  the two level decrease pursuant to Guidelines § 2D1.1(b)(17) (safety valve).

### U.S.S.G. CHAPTER 3 ADJUSTMENTS

8.  The defendant maintains that the following adjustment to the base offense level does apply:

4

a. the two (2) level downward adjustment of Guidelines § 3B1.2(b) (minor role in offense).

The government specifically reserves the right at the time of sentencing to argue to the Court that this downward adjustment does not apply.

## ADJUSTED OFFENSE LEVEL

9. Based on the foregoing, it is the understanding of the government and the defendant that, if the government's calculations apply, the adjusted offense level for the offense of conviction is **34**. It is the understanding of the government and the defendant that, if the defendant's calculations apply, the adjusted offense level for the offense of conviction is **29**.

## ACCEPTANCE OF RESPONSIBILITY

10. At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level downward adjustment of Guidelines § 3E1.1(a) (acceptance of responsibility) and further agrees to move the Court to apply the additional one (1) level downward adjustment of Guidelines § 3E1.1(b), which would result in a total offense level of **31**, if the government's calculations apply, and a total offense level of **26**, if the defendant's calculations apply.

## CRIMINAL HISTORY CATEGORY

11. It is the understanding of the government and the defendant that the defendant's criminal history category is **I**. The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the

5

defendant's criminal history category may increase. The defendant understands that the defendant has no right to withdraw the plea of guilty based on the Court's determination of the defendant's criminal history category.

### GUIDELINES' APPLICATION, CALCULATIONS AND IMPACT

12. It is the understanding of the government and the defendant that:

a. if the government's calculations apply, with a total offense level of **31** and criminal history category of **I**, the defendant's sentencing range would be a term of imprisonment of **108 to 135** months, a fine of **$30,000** to **$10,000,000**, and a period of supervised release of **5** years; and

b. if the defendant's calculations apply, with a total offense level of **26** and criminal history category of **I**, the defendant's sentencing range would be a term of imprisonment of **63 to 78** months, a fine of **$25,000** to **$10,000,000**, and a period of supervised release of **5** years.

c. Notwithstanding this, the defendant understands that at sentencing the defendant is subject to the minimum and maximum penalties set forth in ¶ **1** of this agreement.

13. The government and the defendant agree to the Sentencing Guidelines calculations set forth in this agreement and neither party will advocate or recommend the application of any other Guideline, or move for any Guidelines departure, or move for or recommend a sentence outside the Guidelines, except as specifically set forth in this

agreement. A breach of this paragraph by one party will relieve the other party of any agreements made in this plea agreement with respect to sentencing motions and recommendations. A breach of this paragraph by the defendant shall also relieve the government from any agreements to dismiss or not pursue additional charges.

14. The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw the plea of guilty based on the sentence imposed by the Court.

## IV. STATUTE OF LIMITATIONS

15. In the event the defendant's plea of guilty is withdrawn, or conviction vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any other criminal offense involving or related to the unlawful possession, manufacture, distribution or importation of controlled substances which is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty plea or vacating of the conviction becomes final.

## V. ALIEN STATUS

16. The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status as the defendant is not a citizen of the United States. Under federal law, the crime to which the defendant is pleading guilty is a

removable offense. The defendant understands that, as a result of the offense to which the defendant is pleading guilty, removal is presumptively mandatory. Removal and other immigration consequences will be the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty the effect of a conviction in this case on the defendant's immigration status. The defendant nevertheless wants to plead guilty regardless of the immigration consequences of a conviction on the defendant's immigration status, even if the consequence is the defendant's automatic removal from the United States.

17. If the defendant is eligible and applies to transfer the defendant's sentence pursuant to the international prisoner transfer program, the Office of the United States Attorney for the Western District of New York agrees not to oppose the defendant's transfer application. Defendant acknowledges and understands, however, that the transfer decision rests in the sole discretion of the Office of Enforcement Operations (OEO) of the Criminal Division of the United States Department of Justice and that the position of the Office of the United States Attorney for the Western District of New York is neither binding nor determinative of the positions of other federal agencies or on the final transfer decision of OEO. Defendant further understands that in addition to OEO, federal law and the underlying transfer treaties require that the foreign government must also approve the transfer.

## VI. GOVERNMENT RIGHTS AND RESERVATIONS

18. The defendant understands that the government has reserved the right to:

    a. provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

    b. respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

    c. advocate for a specific sentence consistent with the terms of this agreement including the amount of a fine and the method of payment; and

    d. modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and statements by the defendant subsequent to this agreement, regarding the recommendation or factor.

19. At sentencing, the government will move to dismiss the open counts of the Second Superseding Indictment against this defendant in this action.

20. The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

## VII. APPEAL RIGHTS

21. The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a

sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine, and supervised release set forth in Section III, ¶ 12(a), above, notwithstanding the manner in which the Court determines the sentence. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence.

22. The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

23. The government waives its right to appeal any component of a sentence imposed by the Court that falls within or is greater than the sentencing range for imprisonment, a fine, and supervised release set forth in Section III, ¶ 12(b), above, notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves the right to argue the correctness of the defendant's sentence.

## VIII. TOTAL AGREEMENT AND AFFIRMATIONS

24. This plea agreement represents the total agreement between the defendant, STACY SAMUELS, and the government. There are no promises made by anyone other than those contained in this agreement. This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

WILLIAM J. HOCHUL, JR.
United States Attorney
Western District of New York

BY: _____
EDWARD H. WHITE
Assistant U.S. Attorney

Dated: February 19, 2016

I have read this agreement, which consists of 11 pages. I have had a full opportunity to discuss this agreement with my attorney, Robert N. Convissar, Esq. I agree that it represents the total agreement reached between myself and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my plea of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will.

_____
STACY SAMUELS
Defendant

Dated: February 6, 2016

_____
ROBERT N. CONVISSAR, ESQ.
Attorney for the Defendant

Dated: February 19, 2016